Gene J. Stonebarger, State Bar No. 209461
gstonebarger@stonebargerlaw.com
Richard D. Lambert, State Bar No. 251148
rlambert@stonebargerlaw.com
Elaine W. Yan, State Bar No. 277961
eyan@stonebargerlaw.com
STONEBARGER LAW
A Professional Corporation
75 Iron Point Circle, Suite 145
Folsom, CA 95630
Telephone (916) 235-7140
Facsimile (916) 235-7141

*Attorneys for Plaintiff Amanda Georgino and the Class*

*Additional Plaintiffs' Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA GEORGINO, an individual, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>SUR LA TABLE, INC., a Washington corporation; and DOES 1 through 50, inclusive,<br><br>    Defendants.<br><br>────────────────<br>AND CONSOLIDATED CASES | Case No.: 2:11-CV-03522-MMM-JEM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Filed concurrently with Class Action Settlement Agreement; Declaration of Gene J. Stonebarger; and Proposed Order]<br><br>Date: December 17, 2012<br>Time: 10:00 a.m.<br>Judge: Hon. Margaret M. Morrow |

/ / /

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................1

II.  PROCEDURAL HISTORY ..................................................................2

   A.  The Georgino Action .....................................................................2

   B.  The Dardarian Action.....................................................................2

   C.  The Petersen Action .......................................................................2

   D.  Court's Order Consolidating the Georgino, Dardarian and Petersen Actions..................................................................3

   E.  Settlement Negotiations .................................................................3

III. BASIC ELEMENTS OF THE PROPOSED SETTLEMENT ....................4

   A.  Class Benefits.................................................................................4

   B.  Class Notice ...................................................................................4

      1.  *Direct Mail or Email Notice*.................................................4

      2.  *In-Store Notice*...................................................................5

      3.  *Settlement Website*.............................................................5

   C.  Completing Claim Forms................................................................5

   D.  Right to Elect Not to Participate in the Settlement.......................5

   E.  Right to Object ...............................................................................6

   F.  Incentive Payments to Class Representatives ...............................6

   G.  Attorneys' Fees and Costs .............................................................7

   H.  Settlement Implementation Costs ..................................................7

IV.  THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE PRELIMINARY APPROVAL........................................................8

   A.  The Proposed Settlement Meets All Criteria Establishing Fairness........8

      1.  *Strength of Plaintiffs' Case* ...............................................8

      2.  *The Risk, Expense, Complexity, and Duration of Further Litigation and the Risk of Maintaining Class Action Status Through Trial* ...........................................12

      3.  *The Benefits Offered in Settlement* .................................12

STONEBARGER LAW
A Professional Corporation

4.  *The Extent of Discovery and Stage at Which Settlement
    Is Reached* ............................................................................... 13

5.  *Experience and Views of Counsel* ....................................... 13

6.  *Presence of Governmental Participants* ............................. 14

7.  *The Proposed Settlement Resulted from Serious, Informed and
    Non-Collusive Arm's-Length Negotiations* ......................... 14

V.   THE PROPOSED SETTLEMENT CLASS SHOULD BE
     CERTIFIED ................................................................................. 15

  A.  The Settlement Satisfies the Requirements of Rule 23(a) ..... 15

    1.  *Numerosity* ....................................................................... 16

    2.  *Commonality* ..................................................................... 16

    3.  *Typicality* .......................................................................... 16

    4.  *Adequacy* ........................................................................... 17

  B.  The Settlement Class Should be Certified Under Rule 23(b)(3) ......... 18

    1.  *Common Questions Predominate Over Individual Issues* ......... 19

    2.  *A Class Action is the Superior Method to Settle this
        Controversy* ...................................................................... 19

VI.   THE PROPOSED CLASS NOTICE PROGRAMS IS
      APPROPRIATED, AND CLASS NOTICE SHOULD
      BE APPROVED ........................................................................... 20

VII.  IF THE SETTLEMENT IS PRELIMINARILY APPROVED,
      THE COURT SHOULD SCHEDULE A HEARING
      ON FINAL SETTLEMENT APPROVAL ................................. 22

VIII. CONCLUSION ............................................................................. 22

STONEBARGER LAW
A Professional Corporation

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Federal Cases**

*Adams v. Inter-Con Sec. Sys. Inc.*,

   No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ................ 15

*Amchem v. Windsor*, 521 U.S. 591 (1997) ..................................................... 19, 20

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004) .............................. 21

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...................... 8

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) ................................. 20

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd. Cir. 1974) ................................. 11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ......................................... 21

*Gass v. Best Buy*, 279 F.R.D. 561 (C.D. Cal. 2012) ......................................... 11

*Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147 (1982) ....................................... 19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................... passim

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ........................... 17

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,

   216 F.R.D. 197 (D. Me. 2003) ................................................................... 22

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) .......... 13

*In re Employee Benefit Plans Sec. Litig.*,

   No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) ........................... 15

*In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) .......................... 16

*In re Immune Response Secs. Litigation*,

   497 F. Supp. 2nd 1166 (S.D. Cal. 2007) ............................................... 8, 11

*In re Indep. Energy Holdings PLC*,

   No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .......... 15

*In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ................... 8

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ............. 7

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) ................ 15

STONEBARGER LAW
A Professional Corporation

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ................................................................ 18

*Manchaca v. Chafer*, 927 F. Supp. 962 (E.D. Tex. 1996) ............................... 15

*Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338 (9th Cir. 1980) .................... 21

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ...................... 21

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................. 14

*Officers of Justice v. Civil Service Com.*, 688 F.2d 615 (9th Cir. 1982) ............ 8, 11

*Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc.
   v. Anderson*, 390 U.S. 414, 434, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968) ............... 8

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ........................................ 17

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ........................ 8

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ...................... 20

*Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658 (C.D. Cal. 2009) ............ 16, 17, 19, 20

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) .................. 20

**State Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*,
   85 Cal.App.4th 1135 (2000) ................................................................. 11

*Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43 (2008) ................................... 13

*Florez v. Linens 'N Things, Inc.*, 108 Cal.App.4th 447 (2003) .......................... 9

*Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal.4th 524 (2011) ................... 10, 11

*The TJX Companies, Inc. v. Superior Court*,
   163 Cal.App.4th 80 (2008) .................................................................. 10

*Vasquez v. Superior Court*, 4 Cal.3d 800 (1971) ...................................... 20

*Young v. Bank of Am.*, 141 Cal.App.3d 108 (1983) ....................................... 9

**Federal Statutes**

28 U.S.C. § 1404(a) .......................................................................... 3

28 U.S.C. § 1715(b) .......................................................................... 14

STONEBARGER LAW
A Professional Corporation

**State Statutes**

California Civil Code § 1747.08 ................................................................ passim

**Federal Rules**

Federal Rule of Civil Procedure 23 ........................................................... passim

**Miscellaneous Authorities**

7A C.A. Wright, A.R. Miller, & M. Kane,
  Federal Practice & Procedure § 1777 (2d ed. 1986) ............................. 18

Assem. Floor Analysis, 3d Reading of Assem. Bill No. 2533
  (1995-1996 Reg. Sess.) May 15, 1996 ................................................. 10

Dept. Consumer Affairs, Analysis of Assem. Bill No. 1316
  (1995-1996 Reg. Sess.) ......................................................................... 10

Federal Practice & Procedure § 1778 ......................................................... 19

*Newberg on Class Actions*, § 11.41 (4th ed. 2007) ................................. 14

Off. of Sen. Floor Analyses, 3d Reading Analysis of Assem. Bill No. 1316
  (1995-1996 Reg. Sess.) July 18, 1995 ..................................................... 9

## I.    **INTRODUCTION**

This is a putative class action brought by Plaintiffs Amanda Georgino, Nancy Dardarian, and Linda Petersen ("Plaintiffs") on behalf of themselves and all other consumers who purchased merchandise from stores owned and operated by Sur La Table, Inc. ("Sur La Table " or "Defendant") in California, used a credit card to make an in-store purchase, and whose personal identification information was requested and recorded by a Sur La Table employee.

Sur La Table is a retailer which owns and operates stores throughout California.  This action arises from Sur La Table's alleged violation of the Song-Beverly Credit Card Act, codified as California Civil Code section 1747.08 ("Section 1747.08"), by and through its alleged practice of requesting and recording personal identification information from its customers using credit cards at Sur La Table's retail stores in California.

Sur La Table denies all claims of wrongdoing and asserts several affirmative defenses on the grounds that it did not violate the Song-Beverly Credit Card Act or any other laws relating to its alleged conduct.

After extensive arms-length negotiations, including a full day mediation session with Michael Dickstein, Esq. of Dickstein Dispute Resolution, Plaintiffs and Sur La Table (collectively, the "Parties") have entered into a Settlement Agreement and Release (the "Settlement Agreement," a true and correct copy of which is filed concurrently and attached to the Declaration of Gene J. Stonebarger ("Stonebarger Decl.") as **Exhibit '1'**).

Plaintiffs' counsel believes that the proposed settlement is fair, reasonable and adequate; therefore, Plaintiffs now move the Court for an order: (1) preliminarily approving the Settlement Agreement as being fair, reasonable, and adequate; (2) provisionally certifying the Class under Federal Rule of Civil Procedure 23 for settlement purposes only; (3) preliminarily approving the form, manner, and content of the Class Notices and Claim Form; (4) appointing Plaintiffs

STONEBARGER LAW
A Professional Corporation

1  Amanda Georgino, Nancy Dardarian, and Linda Petersen as the Class

2  Representatives; (5) appointing the law firms of Stonebarger Law, APC, Patterson

3  Law Group, APC, and Hoffman & Lazear as counsel for the Class; and (6) setting

4  the date and time of the Fairness Hearing.

5  **II.    PROCEDURAL HISTORY**

6      **A.    The Georgino Action**

7      On or about February 16, 2011, Plaintiff Amanda Georgino filed a class

8  action complaint in the Los Angeles County Superior Court entitled *Amanda*

9  *Georgino v. Sur La Table, Inc.*, Case No. BC455406, in which she alleged claims

10  on her own behalf and on behalf of all others similarly situated for violations of

11  California's Song-Beverly Credit Card Act, Civil Code section 1747.08 (the

12  "Georgino Action").

13      On or about April 25, 2011, Sur La Table removed the Georgino Action to

14  the Central District of California where it was assigned the case number CV11-

15  03522-MMM (JEMx).

16      **B.    The Dardarian Action**

17      On or about March 1, 2011, Plaintiff Nancy Dardarian filed a class action

18  complaint in the Northern District of California entitled *Nancy Dardarian v. Sur*

19  *La Table, Inc.*, Case No. 3:11-cv-00948-CRB, in which she alleged claims on her

20  own behalf and on behalf of all others similarly situated violations of California's

21  Song-Beverly Credit Card Act, Civil Code section 1747.08 (the "Dardarian

22  Action");

23      **C.    The Petersen Action**

24      On or about March 15, 2011, Plaintiff Linda Petersen filed a class action

25  complaint in the Northern District of California entitled *Linda Petersen v. Sur La*

26  *Table, Inc.*, Case No. 3:11-cv-01254-CRB, in which she alleged claims on her own

27  behalf and on behalf of all others similarly situated for violations of California's

28  Song-Beverly Credit Card Act, Civil Code section 1747.08 (the "Petersen

STONEBARGER LAW
A Professional Corporation

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   Action");

2   **D.    Court's Order Consolidating the Georgino, Dardarian and**
3       **Petersen Actions**

4       On or about August 29, 2011, the Honorable Charles R. Breyer transferred

5   the Dardarian Action and the Petersen Action to the Central District of California

6   pursuant to 28 U.S.C. §1404(a).

7       On or about November 8, 2011, the Hon. Margaret M. Morrow ordered the

8   Georgino, Dardarian and Petersen Actions consolidated under case number CV11-

9   03522-MMM(JEMx) (the "Action").

10  **E.    Settlement Negotiations**

11      Plaintiffs engaged in formal discovery and analyzed the relevant legal issues

12  with regards to the claims in, and potential defenses to, the Action.  Stonebarger

13  Decl. at ¶3.  Plaintiffs also considered the uncertainties of trial and the benefits to

14  be obtained under the proposed Settlement and have considered the costs, risks,

15  and delays associated with the continued prosecution of this time-consuming

16  litigation and the likely appeals of any rulings in favor of either Plaintiffs or

17  Defendant.  *Id*.  The Parties believe their respective positions in the Action are

18  meritorious.  *Id*.  However, due to the uncertainties and expense of protracted

19  litigation, Plaintiffs decided it is in the best interest of Plaintiffs and the Class to

20  explore mutual resolution of the Action.  *Id*.

21      Accordingly, on August 21, 2012, the Parties participated in an all-day

22  mediation conducted by Michael Dickstein, Esq. of Dickstein Dispute Resolution,

23  an experienced mediator.  *Id*. at ¶4.  Following the mediation, the Parties, through

24  their respective counsel, continued to negotiate through the mediator and

25  ultimately agreed on the material terms.  The terms of the settlement between the

26  Parties are embodied in the Settlement Agreement. *Id*. at ¶2; Exh. '1'.

27  ///

28  ///

STONEBARGER LAW
A Professional Corporation

## III.   BASIC ELEMENTS OF THE PROPOSED SETTLEMENT

### A.   Class Benefits

Within forty-five (45) days after the Court enters its order granting Preliminary Approval of the Settlement, all Class members for whom Defendant has an email or home address ("Known Class Members") will be directly emailed or mailed a Merchandise Certificate in the amount of $13.00 ("Merchandise Certificate").  All unknown Class members for whom Defendant does not have an email or home address ("Unknown Class Members") who timely return a valid claim form will also be directly sent a Merchandise Certificate within thirty (30) days after the Judgment becomes final.  The Merchandise Certificates will be redeemable upon delivery for twelve (12) months for new merchandise purchases only at any of Defendant's retail stores, are freely transferable, and have no restrictions on use.  *See* Settlement Agreement, § III (B).

### B.   Class Notice

The Notice of Class Action Settlement will be provided through the following methods:

#### 1.   *Direct Mail or Email Notice*

Within forty-five (45) days after the Court enters its order granting Preliminary Approval of the Settlement, Sur La Table will email, or if no email address is available, mail, the Summary Postcard Class Notice (substantially in the form attached as **Exhibit E** to the Settlement Agreement) and a merchandise certificate with the value of $13 to all Known Class Members.  *See* Settlement Agreement § III (E)(2)(a).  Prior to mailing the Summary Postcard Notice and merchandise certificate to Known Class Members, Defendant will conduct a National Change of Address search for all Known Class Member's current postal address.

Known Class Members for whom the Summary Postcard Class Notice is returned as undeliverable will be removed from the group of Known Class

STONEBARGER LAW
A Professional Corporation

1  Members and will not be directly mailed a merchandise certificate.

2  **2.    *In-Store Notice***

3  Within forty-five (45) days after the Court enters its order granting

4  Preliminary Approval of the Settlement, Defendant will post at each of the points

5  of sale in each of its California stores a clear and conspicuous copy of the

6  Summary In-Store Notice (substantially in the form attached as **Exhibit F** to the

7  Settlement Agreement) containing instructions for Unknown Class Members to

8  submit a claim, elect not to participate or object.  These notices will remain posted

9  in Defendant's California stores for at least thirty (30) days. *See* Settlement

10  Agreement § III (E)(2)(d).

11  **3.    *Settlement Website***

12  Within twenty-one (21) days after the Court enters its order granting

13  Preliminary Approval of the Settlement, Defendant will cause a Settlement

14  Website to be set up.  The Settlement Website will be active until the Judgment

15  becomes final and will contain information relating to the Settlement, including a

16  long form Class Notice and a downloadable Claim Form for Unknown Class

17  Members.  *See* Settlement Agreement § III (D).

18  **C.    <u>Completing Claim Forms</u>**

19  Unknown Class Members will have ninety (90) days after the Court enters

20  its order granting Preliminary Approval of the Settlement ("Claim Deadline") to

21  complete in full, sign and return to the Settlement Administrator a timely Claim

22  Form (substantially in the form of **Exhibit G** to the Settlement Agreement) to

23  receive a merchandise certificate.  The date of the postmark on the return envelope

24  will be the exclusive means used to determine whether a Class member has

25  "timely" returned the Claim Form by the Claim Deadline.

26  **D.    <u>Right to Elect Not to Participate in the Settlement</u>**

27  Class members who wish to exclude themselves from the Settlement must

28  mail to the Settlement Administrator, not later than ninety (90) days after the Court

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

STONEBARGER LAW
A Professional Corporation

enters its order granting Preliminary Approval of the Settlement, a signed and notarized Election Not to Participate in Settlement.  A Class member who does not complete and mail a timely Election Not to Participate in Settlement in the manner and by the deadline specified in the Settlement Agreement will be bound by all terms and conditions of the Settlement, if the Settlement is approved by the Court, and by the Judgment, regardless of whether he or she has objected to the Settlement.  *See* Settlement Agreement § III (E)(4)(b).

### E.     Right to Object

Class members who wish to object to the Settlement must file with the Court and serve on counsel for the Parties, not later than ninety (90) days after the Court enters its order granting Preliminary Approval of the Settlement Administrator, a written objection to (i) the Settlement, and/or (ii) Plaintiffs and Class Counsel's request for the Class Representative Payments, or the Class Counsel Fees and Litigation Expense Payment.  Class members who fail to file and serve timely written objections will be deemed to have waived any objections and will be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.  *See* Settlement Agreement § III (E)(4)(a).

### F.     Incentive Payments to Class Representatives

After the Parties agreed to the Class benefits, Mr. Dickstein proposed, and the Parties agreed, that Sur La Table would not object to a request by Plaintiffs for the Court's approval of an award of incentive payments of $4,000.00 to each Plaintiff in recognition of the risk to them as the Class representatives in commencing the Action, both financial and otherwise, and the amount of time and effort spent by Plaintiffs as the Class representatives.  *See* Settlement Agreement § III(C).

Accordingly, in the event this Settlement Agreement receives Final Judicial Approval, Sur La Table will pay, within thirty (30) calendar days after the Judgment becomes final, an incentive award of $4,000.00 each to proposed Class

STONEBARGER LAW
A Professional Corporation

1  Representatives Amanda Georgino, Nancy Dardarian, and Linda Petersen.  *See*

2  Settlement Agreement § III(E)(9).

3       Plaintiffs will provide further supporting documentation and briefing

4  regarding the agreed upon awards for the named Plaintiffs' incentive payments in

5  their Motion for an Award of Attorneys' Fees and Costs to Class Counsel and for

6  Incentive Awards to the Class Representatives.

7       **G.**     **Attorneys' Fees and Costs**

8       After the Parties reached an agreement as to the Class benefits, Mr.

9  Dickstein proposed, and the Parties agreed, that Sur La Table would not object to a

10  request by Plaintiffs for the Court's approval of an award of attorneys' fees and

11  costs in the amount of $425,000.00.  The Parties agreed that an award of attorneys'

12  fees and costs in the amount of $425,000.00 to Class Counsel represents a fair and

13  commensurate amount in view of the nature of the Action and the risks and costs

14  incurred.  *See* Settlement Agreement § III(C).

15       Accordingly, in the event the Parties' Settlement Agreement receives Final

16  Judicial Approval and these attorneys' fees and costs amounts are approved by this

17  Court, Sur La Table will pay, within thirty (30) calendar days after the Judgment

18  becomes final, proposed Class Counsel's attorneys' fees and costs in the amount of

19  $425,000.00 separate and apart from any benefits to the Class, in full satisfaction

20  of any and all claims for attorneys' fees and costs arising out of or relating to this

21  Action including this Settlement.  *Id.*

22       Plaintiffs will provide further supporting documentation and briefing

23  regarding the agreed upon awards for attorneys' fees and costs in their Motion for

24  an Award of Attorneys' Fees and Costs to Class Counsel and for Incentive Awards

25  to the Class Representatives.  Plaintiffs' Motion for attorneys' fees will be filed

26  prior to the objection deadline.  *See In re Mercury Interactive Corp. Sec. Litig.*,

27  618 F.3d 988 (9th Cir. 2010).

28  / / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

STONEBARGER LAW
A Professional Corporation

## H.     Settlement Implementation Costs

Sur La Table will bear all costs of providing Class Notice in the manner set forth in the Settlement Agreement and all costs associated with the administration of the Settlement.  *See* Settlement Agreement §III(D).

## IV.   THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE PRELIMINARY APPROVAL

### A.     The Proposed Settlement Meets All Criteria Establishing Fairness.

As explained by the court in *In re Immune Response Secs. Litigation*, 497 F. Supp. 2nd 1166, 1169-1170 (S.D. Cal. 2007):

> "'Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable.' *Officers for Justice*, 688 F.2d at 625; see also *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). When determining whether approval of a settlement is warranted, courts consider 'several factors which may include, among others, some or all of the following: [1] the strength of Plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.' *Torrisi*, 8 F.3d at 1375; see also *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Further, '[t]o survive appellate review, the district court must show it has explored comprehensively all [fairness] factors.' *Hanlon*, 150 F.3d at 1026 (citing *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968)). Finally, 'the settlement may not be the product of collusion among the negotiating parties.' [*In re*] *Mego Financial Corp. Sec. Litigation*, 213 F.3d [454] at 458 [(9th Cir. 2000)] (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992))."[1]

---

[1] The guidance of Rule 23(e)(2) of the Federal Rules of Civil Procedure on the approval of a class action settlement is that it must be "fair, reasonable, and adequate."

STONEBARGER LAW
A Professional Corporation

**1.    *Strength of Plaintiffs' Case***

Plaintiffs assert that Sur La Table violated California Civil Code section 1747.08 in that as part of processing its customers' credit card transactions, Sur La Table requested and recorded customers' personal identification information. California Civil Code section 1747.08, its present form, states in relevant part:

> (a)  Except as provided in subdivision (c), no person, firm, partnership, association, or corporation which accepts credit cards for the transaction of business shall do either of the following:

> (2)  *Request*, or require as a condition to accepting the credit card as payment in full or in part for goods or services, *the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.*" Cal. Civ. Code § 1747.08(a)(2) (emphasis added).

California Civil Code section 1747.08 is part of the Song-Beverly Credit Card Act and was designed to promote consumer protection; the Act imposes fair business practices for the protection of consumers. *Florez v. Linens 'N Things, Inc.*, 108 Cal. App. 4th 447, 450 (2003) (*citing Young v. Bank of Am.*, 141 Cal. App. 3d 108 (1983)).  Plaintiffs contend that Section 1747.08 was originally enacted as a response to two principal privacy concerns:  first, that with increased use of computer technology, very specific and personal information about a consumer's spending habits was being made available to anyone willing to pay for it; and second, that acts of harassment and violence were being committed by store clerks who obtained customers' phone numbers and addresses. *Id.* at 452; *see also* Off. of Sen. Floor Analyses, 3d Reading Analysis of Assem. Bill No. 1316 (1995-1996 Reg. Sess.) July 18, 1995, p. 3.

/ / /

STONEBARGER LAW
A Professional Corporation

1    Additionally, Plaintiffs contend the statute was intended to keep the

2    customer's credit card number separate and apart from his or her personal

3    information such as address, telephone number, birth date, etc., in order to prevent

4    thieves from obtaining both at the same time (*i.e.*, "dumpster diving") and

5    engaging in credit card fraud, usually over the telephone.  Assem. Floor Analysis,

6    3d Reading of Assem. Bill No. 2533 (1995-1996 Reg. Sess.) May 15, 1996, pp. 1-

7    2.  When drafting 1747.08, the Legislature was well aware that anyone with access

8    to a consumer's credit card number and address could access their credit history,

9    open credit in their name, or charge something in their name.  Dept. Consumer

10   Affairs, Analysis of Assem. Bill No. 1316 (1995-1996 Reg. Sess.) p. 1.

11   Last year, the California Supreme Court issued its unanimous opinion in

12   *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524 (2011), confirming that

13   ZIP codes are "personal identification information" as defined in section 1747.08.

14   *Pineda*, 51 Cal. 4th at 524.  Pursuant to California Civil Code section 1747.08(e), a

15   violator of the statute shall be liable for a civil penalty of up to $250.00 for the first

16   violation and up to $1,000.00 for each subsequent violation of the statute.  Cal.

17   Civ. Code § 1747.08(e).  Although a violator of the statute is subject to a

18   mandatory civil penalty, the amount of the civil penalty to be imposed against a

19   Defendant is discretionary.  Civil penalties could be as little as a penny or the

20   "proverbial peppercorn."  *See The TJX Companies, Inc. v. Superior Court*, 163 Cal.

21   App. 4th 80, 86-87 (2008).

22   Sur La Table denies any wrongdoing in this case.  Sur La Table contends

23   that, from February 16, 2010 to February 11, 2011, its sales associates requested

24   and recorded personal identifying information from Sur La Table customers,

25   regardless of form of tender, only after the customer voluntarily requested to be

26   included on Sur La Table's preferred mailing list.  Accordingly, Sur La Table

27   maintains that no customer paying with a credit would reasonably believe that

28   providing his or her personal information was a condition for completing a credit

STONEBARGER LAW
A Professional Corporation

-10-

1   card transaction. Sur La Table therefore contends that there is no liability under

2   section 1747.08 and that the proposed class is overbroad and cannot be certified.

3   *See Gass v. Best Buy*, 279 F.R.D. 561, 572-573 (C.D. Cal. 2012).

4        In determining whether the settlement is fair, the Court has to assess whether

5   the relief offered by the settlement is reasonable, in light of the claims to be

6   released. At this stage, the Court need only to conduct a *prima facie* review of the

7   relief and notice provided by the settlement to determine whether notice should be

8   sent to the settlement class members. *In re Immune Response*, 497 F.Supp.2d at

9   1172. It is simply "not appropriate for the court to attempt to settle these questions

10   of law and fact: '[T]he settlement or fairness hearing is not to be turned into a trial

11   or rehearsal for trial on the merits. Neither the trial court nor [the appellate court]

12   is to reach any ultimate conclusions on the contested issues of fact and law which

13   underlie the merits of the dispute, for it is the very uncertainty of outcome in

14   litigation and avoidance of wasteful and expensive litigation that induce

15   consensual settlements.'" *Id.* (citing *Officers of Justice v. Civil Service Com.*, 688

16   F.2d 615, 625 (9th Cir. 1982)).

17        In sum, "the merits of the underlying class claims are not a basis for

18   upsetting the settlement of a class action; the operative word is 'settlement.'" *7-*

19   *Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal.App.4th 1135,

20   1150 (2000). Even "[t]he fact that a proposed settlement may only amount to a

21   fraction of the potential recovery does not, in and of itself, mean that the proposed

22   settlement is grossly inadequate and should be disapproved." *Detroit v. Grinnell*

23   *Corp.*, 495 F.2d 448, 455 (2nd. Cir. 1974).

24        Plaintiffs believe that their case is strong in light of the California Supreme

25   Court's unanimous decision in *Pineda* confirming that "requesting and recording a

26   cardholder's [personal identification information], without more, violates the

27   [California] Credit Card Act." *Pineda*, 51 Cal.4th at 527-28. The outcome of this

28   case is uncertain, however, and if Sur La Table was to prevail on its arguments, the

STONEBARGER LAW
A Professional Corporation

-11-

1  Class would obtain little or nothing through litigation.  Even if Plaintiffs were to

2  convince the Court to certify the Class after a contested motion for class

3  certification and eventually establish liability at trial, then the amount of the civil

4  penalty to be awarded (somewhere between a penny and $1,000) would rest within

5  the sound discretion of the trial court.  *Id.* at 536.  As such, if Plaintiffs and the

6  Class succeed at trial, the amount of the civil penalties to be awarded by the Court

7  is uncertain.

### 2.    *The Risk, Expense, Complexity, and Duration of Further Litigation and the Risk of Maintaining Class Action Status Through Trial*

10      The settlement takes into account the risk, expense, and complexity of

11  further litigation.  Plaintiffs and the Class would have to retain additional experts

12  to conduct forensic analysis of the recording and storage of Sur La Table's

13  customer information, as well as experts to testify to the value of the collected

14  information.  Stonebarger Decl. at ¶5.

15      Sur La Table would vigorously oppose Plaintiffs' attempt to get a class

16  certified and may also retain experts to defeat certification and the Class claims.

17  *Id.*

18      Additional time consuming and expensive law and motion proceedings

19  would be necessary to narrow or eliminate the claims and defenses both at the

20  certification stage and the trial stage.  The time and expense of further litigation

21  could potentially negatively impact Sur La Table's business operations and would

22  interfere with potential Class members' opportunity to obtain benefits promptly.

23  Accordingly, the settlement at this stage in the litigation benefits the Court and the

24  Parties, as well as the Class.  *Id.*

### 3.    *The Benefits Offered in Settlement*

26      All Class members for whom Sur La Table has an email or home address

27  (approximately 92,200 individuals), and all other Class members who submit a

28  timely and valid Claim Form which establishes his or her membership in the Class,

STONEBARGER LAW
A Professional Corporation

1  will receive a $13.00 Merchandise Certificate for use at any Sur La Table

2  California retail store.  Such recovery to the proposed Settlement Class is *without*

3  any risk of the Class not being certified and is without any risk that Plaintiffs will

4  not prevail as to liability and/or penalties.  While the dollar value of the settlement

5  per Class member may be relatively small, it must be remembered that any

6  allegation of alleged harm may be difficult to prove.  *See Chavez v. Netflix,*

7  *Inc.*, 162 Cal.App.4th 43, 55 (2008) (Six dollar benefit provided by the settlement -

8  free DVD rentals - directly addresses the harm alleged in the complaint.  While the

9  dollar value of the settlement per class member is small, Plaintiffs would have

10 encountered considerable difficulties in trying to prove their amount.).

### 4.    *The Extent of Discovery and Stage at Which Settlement Is Reached*

13     It is *not* the law that a class action cannot be settled until the last particle of

14 discovery has been completed and analyzed.  *See In re Corrugated Container*

15 *Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("'It is true that very little formal

16 discovery was conducted and that there is no voluminous record in the case.

17 However, the lack of such does not compel the conclusion that insufficient

18 discovery was conducted'") (emphasis omitted).

19     Through mutual exchange of formal discovery, Plaintiffs believe they have

20 discovered both the evidence needed to establish their *prima facie* cases and to

21 address the full range of contentions advanced by Sur La Table.  In that process,

22 among other things, Sur La Table provided Plaintiffs with information relating to

23 its policies and practices regarding the collection of personal identification

24 information and the approximate total number of Class members as defined by

25 Plaintiffs.    As such, while Sur La Table disagrees with Plaintiffs' assessment of

26 the evidence produced, Sur La Table agrees that counsel for each of the Parties has

27 sufficient information to assess the strengths, weaknesses, and likely expense of

28 taking this case to trial.  Stonebarger Decl. at ¶6.

STONEBARGER LAW
A Professional Corporation

-13-

### 5.     *Experience and Views of Counsel*

Plaintiffs' counsel has extensive experience litigating consumer class actions and has litigated numerous cases based upon violations of the Song-Beverly Credit Card Act.  Stonebarger Decl. at ¶10, Exhs. '2'-'4'.  Plaintiffs' counsel has represented millions of consumers in numerous consumer class actions asserting violations of the Song-Beverly Credit Card Act of 1971.  *Id.*

Based upon Plaintiffs' counsel's substantial experience, Plaintiffs' counsel believes the present settlement is in the best interest of the Class members due to the significant recovery to the Class members, without any risk of the Class not being certified and not prevailing as to liability and/or civil penalties.  *Id.* at ¶11.

### 6.     *Presence of Governmental Participants*

Although there is no governmental entity participating in this matter as of this time, full and complete notice is being provided to all appropriate state and federal authorities.  Sur La Table will provide such notice, which will include all appropriate information and documents required by CAFA (28 U.S.C. § 1715(b)) including:  (1) all complaints and amended complaints filed in the Action, (2) the proposed Settlement Agreement, and (3) settlement notification to Class members and benefit election procedure.  As such, the fact of that notice and the opportunity governmental entities will have to take part in the final approval process weigh in favor of preliminary approval.

### 7.     *The Proposed Settlement Resulted from Serious, Informed and Non-Collusive Arm's-Length Negotiations*

The requirement that a settlement be fair is designed to protect against collusion among the parties.  *See Hanlon*, 150 F.3d at 1026.  Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval."  *Newberg on Class Actions*, § 11.41 (4th ed. 2007); *see also Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded

STONEBARGER LAW
A Professional Corporation

1   to the recommendation of counsel, who are the most closely acquainted with the

2   facts of the underlying litigation."); *In re Employee Benefit Plans Sec. Litig.*, No.

3   3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) ("[t]he court is entitled

4   to rely on the judgment of experienced counsel in its evaluation of the merits of a

5   class action settlement").

6          Here, the Parties engaged the services of Michael Dickstein, Esq. of

7   Dickstein Dispute Resolution, an experienced and skilled mediator, who assisted

8   the Parties during their all-day mediation on August 21, 2012.  Stonebarger Decl.

9   ¶4.  Before the mediation, Class Counsel exchanged information through formal

10   discovery and obtained information from Sur La Table relating to information

11   necessary to evaluate the amount of civil penalties.  *Id.*  Thus, Plaintiffs and their

12   counsel, who are experienced in prosecuting this type of complex class action, had

13   "a clear view of the strengths and weaknesses" of their cases and were in a strong

14   position to make an informed decision regarding the reasonableness of a potential

15   settlement.  *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745

16   (S.D.N.Y. 1985); *see also Manchaca v. Chafer,* 927 F. Supp. 962, 967 (E.D. Tex.

17   1996).

18          The fact that the Settlement was facilitated by an experienced mediator

19   confirms that it is not collusive.  *See, e.g., Adams v. Inter-Con Sec. Sys. Inc.*, No.

20   C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The

21   assistance of an experienced mediator in the settlement process confirms that the

22   settlement is non-collusive."); *In re Indep. Energy Holdings PLC*, No. 00 Civ.

23   6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that

24   the Settlement was reached after exhaustive arm's-length negotiations, with the

25   assistance of a private mediator experienced in complex litigation, is further proof

26   that it is fair and reasonable").  Further, the nature of the subsequent negotiations

27   between the Parties, the experience of counsel in this area, and the fair result

28   reached are all evidence of the arms-length nature of the negotiations that lead to

STONEBARGER LAW
A Professional Corporation

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   the Settlement.

2   **V.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

3         **A.     The Settlement Satisfies the Requirements of Rule 23(a)**

4         Rule 23(a) enumerates four prerequisites for class certification: (1)

5   numerosity; (2) commonality; (3) typicality; and (4) adequacy.  Plaintiffs believe

6   that each of these requirements is met.

7              **1.     *Numerosity***

8         Rule 23(a)(1) requires that "the class is so numerous that joinder of all

9   members is impracticable." Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc.*, 255

10  F.R.D. 658, 664 (C.D. Cal. 2009).  Here, the numerosity requirement is readily met

11  because joinder of absent class members would be exceedingly difficult.

12  According to Sur La Table, from February 16, 2010 through February 11, 2011,

13  Sur La Table conducted approximately 126,000 credit card transactions at its

14  California stores wherein Sur La Table requested and recorded customers' personal

15  identification information, when the information was not needed for any special

16  purpose, such as shipping, delivery, servicing, or installation of the purchased

17  merchandise, or for special orders.  As such, the numerosity requirement is

18  satisfied. Stonebarger Decl. at ¶7.

19             **2.     *Commonality***

20        "The existence of shared legal issues with divergent factual predicates is

21  sufficient [to satisfy commonality], as is a common core of salient facts coupled

22  with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150

23  F.3d 1011, 1019; *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990-91 (9th Cir.

24  2006).  The commonality requirement is construed "permissively." *Hanlon*, 150

25  F.3d at 1019; *Wiener*, 255 F.R.D. at 664.

26        In this case, there are multiple "common issues" affecting the entire Class

27  and Sur La Table's liability; mainly, whether Sur La Table's conduct of requesting

28  and recording customers' personal identification information from its credit card

STONEBARGER LAW
A Professional Corporation

-16-

1  customers violates California Civil Code section 1747.08.  Though the Parties

2  dispute whether such conduct in fact constitutes a violation of section 1747.08, the

3  issue is nonetheless common amongst the Class.  Stonebarger Decl. at ¶8.

### 3.    *Typicality*

4

5  Rule 23(a)(3) typicality is satisfied where the plaintiffs' claims are

6  "reasonably coextensive" with absent class members' claims; they need not be

7  "substantially identical;" *Hanlon*, 150 F.3d at 1020; *see also Wiener*, 255 F.R.D. at

8  665.  The test for typicality "is whether other members have the same or similar

9  injury, whether the action is based on conduct which is not unique to the named

10  Plaintiffs, and whether other class members have been injured by the same course

11  of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

12  Thus, "[t]he purpose of the typicality requirement is to assure that the interest of

13  the named representative aligns with the interests of the class."  *Id.*

14  Plaintiffs allege that they were exposed to the same alleged unlawful policy

15  and practice of Sur La Table.  Specifically, Plaintiffs allege that Sur La Table

16  requested and recorded their personal identification information during a credit

17  card purchase transaction which constituted a violation of section 1747.08.

18  Importantly, Plaintiffs do not allege any claims or facts unique to themselves.

19  Thus, the requirement of typicality is satisfied. Stonebarger Decl. at ¶9.

### 4.    *Adequacy*

20

21  Rule 23(a)(4) requires that "the representative parties will fairly and

22  adequately protect the interests of the class."  Adequacy is satisfied where (i)

23  counsel for the class is qualified and competent to prosecute the action vigorously,

24  and (ii) the interests of the proposed class representatives are not antagonistic to

25  the interests of the Class. *See, e.g., Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir.

26  2003); *Hanlon*, 150 F.3d at 1020; *Weiner*, 225 F.R.D. at 667.[2]

27

28

[2] Rule 23(g)(1) also requires the Court to appoint class counsel.  Plaintiffs request the Court appoint the law firms of Stonebarger Law, APC, Patterson Law Group, APC, and Hoffman & Lazear as Class Counsel.

-17-

1    Plaintiffs have retained counsel with significant experience in prosecuting

2    large consumer protection class actions.  Stonebarger Decl. at ¶10, Exhibits '2'-'4'.

3    Likewise, each of the Plaintiffs is a member of the proposed Class and has the

4    same interests as the Class in maximizing the recovery from Sur La Table.  They

5    allege that Sur La Table requested and recorded each of their personal

6    identification information during a credit card purchase transaction which

7    constituted a violation of section 1747.08.  Additionally, they do not allege any

8    claims or facts unique to themselves or that conflict with the claims of absent Class

9    members.  Thus, Plaintiffs are adequate representatives.

10   **B.**     **The Settlement Class Should be Certified Under Rule 23(b)(3)**

11   The Parties request that the Court, for the purposes of settlement, certify a

12   class of the following individuals under Rule 23(b)(3): "all individuals who used a

13   credit card issued for consumer credit purposes to purchase goods or services from

14   one of Defendant's retail stores (either in person or over the phone) in the State of

15   California during the period of time between February 16, 2010 through February

16   11, 2011, and whose personal identification information was requested and

17   recorded by Defendant for any reason other than a special order, installation, or

18   delivery."

19   Certification under Rule 23(b)(3) is appropriate "whenever the actual

20   interests of the parties can be served best by settling their difference in a single

21   action."  *Hanlon*, 150 F.3d at 1022 (quoting 7A C.A. Wright, A.R. Miller, & M.

22   Kane, *Federal Practice & Procedure* § 1777 (2d ed. 1986)).

23   There are two fundamental conditions to certification under Rule 23(b)(3):

24   (1) questions of law or fact common to the members of the class predominate over

25   any questions affecting only individual members; and (2) a class action is superior

26   to other available methods for the fair and efficient adjudication of the controversy.

27   Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund*

28   *v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150

STONEBARGER LAW
A Professional Corporation

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   F.3d at 1022; *Wiener*, 255 F.R.D. at 668.  Rule 23(b)(3) encompasses those cases

2   "in which a class action would achieve economies of time, effort, and expense, and

3   promote... uniformity of decision as to persons similarly situated, without

4   sacrificing procedural fairness or bringing about other undesirable results."

5   *Amchem v. Windsor*, 521 U.S. 591, 615 (1997) (citations omitted and alterations in

6   original); *Wiener*, 255 F.R.D. at 668.

7                **1.      *Common Questions Predominate Over Individual Issues***

8          The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are

9   sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521

10  U.S. at 623.  "Predominance is a test readily met in certain cases alleging

11  consumer. . . fraud. . . ."  *Id.*  "When common questions present a significant aspect

12  of the case and they can be resolved for all members of the class in a single

13  adjudication, there is clear justification for handling the dispute on a representative

14  rather than on an individual basis."  *Fed Prac. & Proc.*, § 1778; *Gen. Tel. Co. of

15  Sw. v. Falcon,* 457 U.S. 147, 157 n.13 (1982) (noting commonality and typicality

16  tend to merge).

17        The predominance requirement is satisfied here.  As discussed above,

18  Plaintiffs allege Class members are entitled to the same legal remedies based on

19  the same alleged wrongdoing:  exposure to the same alleged policy.  The central

20  issue for every claimant is whether Sur La Table requested and recorded

21  customers' personal identification information in connection with credit card

22  transactions.  Under these circumstances, there is sufficient basis to find that the

23  requirements of Rule 23(b)(3) are satisfied.  *See Weiner*, 255 F.R.D. at 669;

24  *Hanlon*, 150 F.3d at 1022.

25                **2.      *A Class Action is the Superior Method to Settle this
                  Controversy***

26

27        Rule 23(b)(3) sets forth the relevant factors for determining whether a class

28  action is superior to other available methods for the fair and efficient adjudication

STONEBARGER LAW
A Professional Corporation

-19-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  of the controversy. These factors include: (i) the class members' interest in

2  individually controlling separate actions; (ii) the extent and nature of any litigation

3  concerning the controversy already begun by or against class members; (iii) the

4  desirability or undesirability of concentrating the litigation of the claims in the

5  particular forum; and (iv) the likely difficulties in managing a class action. Fed. R.

6  Civ. P. 23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92

7  (9th Cir. 2001). "[C]onsideration of these factors requires the court to focus on the

8  efficiency and economy elements of the class action so that cases allowed under

9  subdivision (b)(3) are those that can be adjudicated most profitably on a

10 representative basis." *Zinser*, 253 F.3d at 1190 (citations omitted); *see also*

11 *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding

12 superiority requirement may be satisfied where granting class certification "will

13 reduce litigation costs and promote greater efficiency").

14      Application of the Rule 23(b)(3) "superiority" factors shows that a class

15 action is the preferred procedure for this Settlement. The amount of potential

16 monetary relief to which an individual class member would be entitled is not large.

17 *Zinser*, 253 F.3d at 1191; *Wiener* 255 F.R.D. at 671. It is neither economically

18 feasible, nor judicially efficient, for the hundreds of thousands of Class members to

19 pursue their claims against Defendant on an individual basis. *Deposit Guar. Nat'l*

20 *Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Hanlon*, 150 F.3d at 1023; *Vasquez v.*

21 *Superior Court*, 4 Cal. 3d 800, 808 (1971). Additionally, the fact of settlement

22 eliminates any potential difficulties in managing the trial of these actions as class-

23 actions. When "confronted with a request for settlement-only class certification, a

24 district court need not inquire whether the case, if tried, would present intractable

25 management problems . . . for the proposal is that there be no trial." *Amchem*, 521

26 U.S. at 620.

27 / / /

28 / / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

STONEBARGER LAW
A Professional Corporation

## VI.   THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE, AND CLASS NOTICE SHOULD BE APPROVED

The threshold requirement concerning the sufficiency of class notice is whether the means employed to distribute the notice is reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  The mechanics of the notice process are best left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process.

In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (*citing Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)); *Hanlon*, 150 F.3d at 1025 (notice should provide each absent class member with the opportunity to opt-out and individually pursue any remedies that might provide a better opportunity for recovery).

The proposed Class Notice (the Class Notice, the Email Notice, the In-Store Notice and the Postcard Notice) meet these standards. *See* Settlement Agreement, Exhs. 'A', 'E'-'F' to Exhibit '1' (collectively, the "Notice").  The Notice is written in simple, straightforward language and includes: (1) basic information about the lawsuit; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class members can obtain Settlement benefits; (4) an explanation of how Class members can exercise their right to opt-out or object to the Settlement; (5) an explanation that any claims against Sur La Table that could have been litigated in these actions will be released if the Class member does not opt out from the Settlement; (6) the names of Class Counsel and information

-21-

1    regarding attorneys' fees and expenses and Plaintiffs' incentive awards; (7) the

2    Final Fairness Hearing date; (8) an explanation of eligibility for appearing at the

3    Final Fairness Hearing; and (9) the Settlement Website where additional

4    information can be obtained.  *Id.*

5          Collectively, the Notice provides Class members with sufficient information

6    to make an informed and intelligent decision about the Settlement.  As such, they

7    satisfy the content requirements of Rule 23.  *See In re Compact Disc Minimum*

8    *Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("notice must

9    describe fairly, accurately and neutrally the claims and parties in the litigation

10   entitled to participate, including the right to exclude themselves from the class").

11         Additionally, the proposed dissemination of Notice to Class members

12   satisfies all due process requirements.  The Settlement provides that Sur La Table

13   will provide notice to the Class after preliminary approval of the Settlement by the

14   Court.  Class members will receive direct Notice via email, mail, and/or through

15   conspicuous in-store postings.  *See* Settlement Agreement § III(E)(2)(a)-(d).  And,

16   the full Class Notice will be available on the Settlement Website.  *Id.* at § I(G).  In

17   sum, the contents and dissemination of the proposed Class Notice constitutes the

18   best notice practicable under the circumstances and fully complies with the

19   requirements of Rule 23.

20   **VII.  IF THE SETTLEMENT IS PRELIMINARILY APPROVED, THE
     COURT SHOULD SCHEDULE A HEARING ON FINAL**
21   **SETTLEMENT APPROVAL**

22         Following notice to the Class members, a fairness hearing is to be held on

23   the proposed settlement.  *See* Manual for Complex Litigation section 21.633.  It is

24   requested that the Court schedule a hearing on final approval of the settlement to

25   be held approximately 120 days after entry of the Preliminary Approval Order.

26   The hearing on the final settlement approval should be scheduled now so that the

27   date can be disclosed in the class notice.  Accordingly, it is requested that this Court

28   schedule a hearing on final approval of the settlement for April 22, 2013, at 10:00

STONEBARGER LAW
A Professional Corporation

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  a.m.

2  VIII.  **CONCLUSION**

3      Based upon the foregoing, and because the proposed settlement is fair,

4  reasonable, and advantageous to the proposed Class members, Plaintiffs

5  respectfully request that the Court enter an Order:

6      (1)  preliminarily approving the Settlement Agreement as being fair,

7  reasonable, and adequate;

8      (2)  preliminarily approving the form, manner, and content of the Class

9  Notice, In-Store Notice,  Summary Postcard Class Notice, and Claim Form;

10      (3)  provisionally certifying the Class under Rule 23 of the Federal Rules of

11  Civil Procedure for settlement purposes only;

12      (4)  appointing Plaintiffs Amanda Georgino, Linda Petersen, and Nancy

13  Dardarian as the Class representatives;

14      (5)  appointing the law firms of Stonebarger Law, APC, Patterson Law

15  Group, APC, and Hoffman & Lazear as Class Counsel; and

16      (6)  setting the Final Approval Hearing on April 22, 2013 at 10:00 a.m.

17  Dated:  November 30, 2012      STONEBARGER LAW, APC

18

19                          By:  /s/ Gene J. Stonebarger
                              Gene J. Stonebarger
20                          Attorneys for Plaintiff Amanda Georgino

21
                            James R. Patterson
22                          PATTERSON LAW GROUP, APC
                            402 West Broadway, 29th Floor
23                          San Diego, CA 92101
                            Telephone: (619) 398-4760
24                          Facsimile: (619) 756-6991

25                          Attorneys for Plaintiff Linda Petersen

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

STONEBARGER LAW
A Professional Corporation

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Chad A. Saunders
HOFFMAN & LAZEAR
180 Grand Avenue, Suite 1550
Oakland, CA 94612
Telephone: (510) 763-5700
Facsimile: (510) 835-1311

Attorneys for Plaintiff Nancy Dardarian

STONEBARGER LAW
A Professional Corporation

-24-